**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ FEB 2 4 2009 ★

BROOKLYN OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------

RICHARD T. MAGLIOCCA,

**COMPLAINT**

**AND**

Plaintiff,

**JURY DEMAND**

v.

**09 ) , 766**

**CIVIL ACTION NO:**

AUTO GALLERY IMPORTS;

THE GUARDIAN WARRANTY CORPORATION;

THE CREDIT UNION LOAN SOURCE, LLC;

FEUERSTEIN, J.

QUANTUM AUTO GROUP, LLC;

"NCB, FSB" aka "NCB SAVINGS BANK, FSB"

Defendants.

TOMLINSON, M.J.

------------------------------------------------------------

## INTRODUCTION

1.     This is an action for damages, declaratory judgment, and equitable and injunctive relief

brought by an individual consumer seeking redress for unlawful practices relating to an

automobile transaction and setting forth Defendants' violations of the Truth In Lending Act, 15

U.S.C. §§ 1601 et. seq. ("TILA"), the Magnusson Moss Consumer Warranty Act, 15 U.S.C. §§

2301 et. seq. (MMCWA), New York General Business Law § 349, and, in addition, claiming for

Breach of Contract, Breach of Express Warranties; Fraud, Unjust Enrichment, and

Rescission/Mistake.

1

2.      Plaintiff Richard T. Magliocca ("Mr. Magliocca") brings suit based on the unfair, abusive and deceptive practices employed by Defendant Auto Gallery Imports, and its assignees, Defendant Quantum Auto Group, LLC, Defendant NCB, FSB aka "NCB Savings Bank, FSB" and, upon information and belief, Defendant The Credit Union Loan Source, regarding a used automobile purchase made on February 25, 2008.

3.      Mr. Magliocca also brings suit against Defendant Guardian Warranty Corporation ("GWC") for various unlawful practices regarding the warranty offered to Mr. Magliocca at the time he purchased the vehicle.

## JURISDICTION AND VENUE

4.      Jurisdiction is based on 15 U.S.C. § 1640 and 28 U.S.C. § 1331, § 1337. The Court has authority to issue a declaratory judgment by virtue of 28 U.S.C. 2201.

5.      This Court has supplemental jurisdiction over the Plaintiff's state law and Magnusson Moss claims pursuant to 28 U.S.C. § 1367.

6.      Venue in this District is proper because most of the events complained of took place in this District, the sale of the vehicle took place in this District, the contracts Mr. Magliocca was induced to sign were offered and executed in this District, and two of the four Defendants, including Defendant Auto Gallery Imports is located in this District.

## THE PARTIES

7.      Plaintiff Richard T. Magliocca is a resident of Rome, New York, in Oneida County.

8.      Defendant Auto Gallery Imports Inc. ("AGI") is a corporation incorporated under the laws of New York and whose principal place of business is located in Nassau, New York.

9.     The Guardian Warranty Corporation ("GWC") is a corporation incorporated under the laws of Pennsylvania and doing business in New York, whose principle place of business is Avoca, Pennsylvania.

10.    Defendant Quantum Auto Group, LLC ("QAG") is a corporation incorporated under the laws of New York and whose principal place of business is located in Suffolk, New York.

11.    Upon information and belief, The Credit Union Loan Source, LLC, ("Credit Union Loan Source"), which is not registered with the New York Secretary of State, is a corporation incorporated under the laws of Georgia, doing business in New York, and whose principal place of business is Atlanta, Georgia.

12.    Upon information and belief, NCB, FSB aka "NCB Savings Bank, FSB" is a federally chartered thrift subsidiary doing business in New York, whose home office is located in Hillsboro, Ohio.

## FACTS

13.    In February, 2008, Mr. Magliocca contacted Auto Gallery Imports based on an advertisement on www.cars.com in which AGI advertised a 2006 Audi A6 with 36,878 miles with a list price of $28,900.

14.    Mr. Magliocca called AGI by phone and spoke with a representative, who confirmed the vehicle's availability and price and who discussed financing with Mr. Magliocca.

15.    Specifically, when Mr. Magliocca informed AGI's representative that Mr. Magliocca planned to finance his purchase with a 6.5% auto loan from his local credit union, the representative stated that the dealer had less expensive financing available and would be able to offer Mr. Magliocca financing at a lower rate.

3

16.     The call ended with Mr. Magliocca scheduling an appointment at AGI for February 25, 2008.

17.     On February 25, 2008, based upon AGI's representations, Mr. Magliocca drove from his home in Rome, New York (Oneida County) to AGI's premises in Westbury, Long Island, a trip of approximately 4 hours.

18.     Once at AGI's premise, Mr. Magliocca was shown the vehicle and discussed his possible purchase of same with an AGI salesman named "Sean".

19.     At all times, Sean represented that the vehicle had a sale price of $28,900 as advertised online.

20.     Sean stated that AGI would offer Mr. Magliocca a 3 year warranty at no additional charge, telling Mr. Magliocca repeatedly that the car "comes with a warranty".

21.     Although AGI had previously told Mr. Magliocca that he should not arrange financing through his local credit union because AGI could "beat that hands down", once at the dealership, Sean informed Mr. Magliocca that AGI would be able to finance the vehicle at 7.05%.

22.     Although Mr. Magliocca originally expressed interest in a three or five year loan, Sean steered him to a seven year loan.

23.     Based on these representations, e.g. regarding the price of the $28,900 price of the vehicle including three year warranty and the 7.05% interest rate, Mr. Magliocca was induced to purchase the vehicle, and induced to sign a "Retail Instalment Contract" (the "Contract") (Exhibit1);

24.     At that time, Mr. Magliocca made a cash downpayment of $8,100, with the rest to be financed.

25.    The Contract states an annual percentage rate of 7.05 percent, a finance charge of $9,816. 48 and an amount financed of $36,381.00

26.    Upon signing the agreement, Mr. Magliocca was not provided with a copy of the Contract.

27.    After getting into his car to go home but before leaving the lot, Mr. Magliocca became concerned that he did not understand how the final price of the vehicle with a list price of $28,900 had become so high and asked Sean for a copy of the contract.

28.    Sean gave Mr. Magliocca a *cropped* photocopy of the Retail Instalment Contract, which was intentionally cut off just above where the "Itemization of Amount Financed" appeared.  See cropped copy provided by Dealer, Exhibit 2.

29.    Mr. Magliocca went to his car, looked at contract and then went back in to AGI's office and questioned Sean again regarding the price of the car.

30.    Sean informed Mr. Magliocca at that time, for the first time, that the warranty was not free, but rather cost $3,233 per year for each of its three years.

31.    At the same time that he was induced to sign the Contract, Mr. Magliocca was induced to sign a document titled "Gallery Store Policy" (the "Store Policy")(attached as Exhibit 3) and a warranty document from Defendant Guardian Warranty Corporation (the "Warranty Agreement")(attached as Exhibit 4).

32.    This Store Policy contains numerous additional contractual provisions not found in the Retail Instalment Contract, all or most of which purport to further limit Mr. Magliocca's rights against the Dealer and/or which provide additional contractual terms not set forth in the Contract or Warranty Agreement and not referenced in either.

5

33. The Warranty Agreement states that Mr. Magliocca's warranty is for "36 Months or 38,500 Miles" and further states that the "Retail Amount" of the warranty is "N/C", i.e. at No Charge.

34. That same day, February 25, 2008, upon arriving home from the dealership, Mr. Magliocca called AGI and asked to cancel the warranty.

35. A representative of AGI informed Mr. Magliocca that in order to cancel the warranty he needed to wait 3 months and refinance.

36. The next day, on February 26, 2008, Mr. Magliocca sent a letter to AGI asking in writing that the warranty be cancelled. Exhibit A.

37. In March of 2008, Mr. Magliocca placed a series of phone calls to AGI, attempting again, to understand why he had been charged so much and seeking, again, to cancel the warranty.

38. During these phone calls, Sean stated that Mr. Magliocca had been charged $3,233 *total* for the three year warranty.

39. Sean again stated that if Mr. Magliocca wished to cancel he would need to wait several months and then refinance.

40. Sean further stated that Mr. Magliocca had been charged what Sean called a "rate buy down fee", the price of which Sean at various times stated was $962 and at other times stated was $1105.

41. Prior to these phone conversations with Sean, Mr. Magliocca had never been informed either verbally or in writing of this "rate buydown" fee.

42. Neither the warranty charge, nor the "buydown" charge were ever mentioned to Mr. Magliocca prior to or during the sale, nor were they ever disclosed in any of the paperwork given to Mr. Magliocca by the Dealer prior to during or after the sale.

43.    Mr. Magliocca subsequently called Defendant Credit Union Loan Source to inquire about the "rate buydown" fee and was informed that this was not something charged by Credit Union Loan Source.

44.    Mr. Magliocca did not agree to any "rate buydown" fee.

45.    Excluding taxes and registration, Mr. Magliocca did not agree to pay any charge above and beyond the $28,900 stated sales price of the vehicle, said price to include both the vehicle and the warranty.

46.    On March 21, 2008, Mr. Magliocca sent a letter to Sean of AGI, stating that he "never agreed to any 'rate buydown' on this loan" and noting that he had foregone the 6.5% interest rate available through his local bank based on AGI's statement that it could "beat that rate any day" but that "Now I am paying 7.05% interest and a buydown charge of $1105.49 times each of the 7 years of the loan." Exhibit 5.

47.    AGI responded to this letter by again suggesting that Mr. Magliocca come in and do a refinance.

48.    Mr. Magliocca did not go back to refinance because he did not want to refinance, just to cancel the warranty and the rate buydown fee.

49.    Notwithstanding Mr. Magliocca's repeated requests, starting the day of the sale (February 25, 2008) that the warranty be cancelled, AGI waited until September 2008 and then submitted the warranty to Defendant GWC.

50.    Upon receiving a letter from GWC regarding his "new" warranty, Mr. Magliocca immediately contacted GWC and had the warranty canceled.

51.     According to correspondence sent from GWC to Mr. Magliocca, instead of refunding Mr. Magliocca the full amount of the warranty, GWC sent a refund check for $767.42 to AGI on 9-25-08. See Exhibit 6, and Exhibit C.

52.     Having been unsuccessful in resolving his dispute despite numerous phone calls and written communications, Mr. Magliocca filed a complaint with the Better Business Bureau on or about September 19, 2008.

53.     On numerous occasions, starting in February 2008 and ending in late October 2008, Mr. Magliocca contacted Defendant GWC and requested that GWC cancel his policy and refund all of his money.

54.     On October 24, 2008, Denise Guiliano of Defendant GWC stated in an email that a refund "based on .6428 percent of unused mileage" had been sent to the dealer on "9-25-08" and that Mr. Magliocca should "contact them [the dealer] for [his] refund. Exhibit 6. See also, letter from D. Guiliano to Mr. Magliocca dated October 30, 2008 and attached as Exhibit C.

55.     On October 28, 2008, in an email to Defendant GWC, Mr. Magliocca stated that in light of the fact that he had been trying to cancel the warranty "since the day the vehicle was purchased", he was entitled to 100% of the warranty fee (and not merely $767.42). Exhibit Exhibit 6.

56.     GWC did not correct its position.

57.     Following Mr. Magliocca's filing a complaint with the Better Business Bureau, he received a call from AGI saying they would remove the rate buydown fee, but only if Mr. Magliocca refinanced the loan through the dealership.

58.     On or about Sunday, November 11, 2008, Mr. Magliocca again made the 4 hour drive from Rome, New York to the dealership.

59.     Upon arriving Mr. Magliocca's arrival at AGI's premises, AGI staff attempted to convince Mr. Magliocca to resolve the dispute by trading up for a more expensive model Audi.

60.     When Mr. Magliocca refused, AGI staff then offered, yet again, to refinance Mr. Magliocca for the remaining amount he owed on the loan for the vehicle he had purchased from them, but without any adjustment of the actual charges, i.e. without cancelling the rate buydown fee.

61.     Mr. Magliocca left without signing or agreeing to any new "deal" and never went back.

62.     During that November 9, 2008 visit AGI again stated that the "refund" for Mr. Magliocca's warranty was "$767.42."

63.     AGI stated that AGI could either give Mr. Magliocca the check for $767.42 (i.e. not the full amount of the warranty, previously represented to Mr. Magliocca as, alternatively, $3,233 per year or $3,233 total) or AGI could reinstate the policy for the remainder of the three year warranty period for no additional charge.

64.     Faced with either receiving back a small fraction of the overall cost of the warranty or continuing the warranty for over two more years of its three year term, Mr. Magliocca stated at that time that he wanted to reinstate the policy.

65.     However, when the Warranty was not subsequently reinstated Mr. Magliocca sent AGI a letter on 1-8-09, requesting that in lieu of the reinstatement that had never occurred, a check be sent to him for $767.42.

66.     Mr. Magliocca then received a call from AGI on January 28, 2009 stating that in order to receive the check, Mr. Magliocca was required to sign the "General Release" attached hereto as Exhibit 7.

67.     Mr. Magliocca did not sign the above mentioned release.

9

68.     Subsequent to this conversation, Mr. Magliocca called AGI and asked for a non-*cropped* copy of his contract.

69.     An AGI representative told him that AGI would not provide him with a copy of the contract and that this could only be obtained from Credit Union Loan Source, LLC, not from the dealer.

70.     On or about February 19, 2009, Mr. Magliocca obtained the partly legible faxed contract attached hereto as Exhibit 1, which includes the Itemization of Amount Financed that AGI had cropped off the copy it belatedly provided to Mr. Magliocca upon his request.

71.     This faxed copy shows a "Cash Price" for the vehicle of $38,700, and, although it is only partly legible, upon information and belief, states a fee to Guardian Warranty of "$2,062.30".
Id.

72.     The retail installment contract that Mr. Magliocca was induced to sign states on its face that "ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF".

73.     For this reason, and as a matter of New York law, Defendants QAG and NCB, as well as –upon information and believe – Defendant Credit Union Loan Source are liable for each and every one of AGI's violations as set forth herein and are subject to each and every claim and defense Mr. Magliocca has against AGI.  Assignment attached as Exhibit B.

74.     Upon information and belief, at all relevant times, AGI and GWC acted willfully and in bad faith.

## COUNT I
### TRUTH IN LENDING ACT, 15 §§1601 et seq. ("TILA")
### (AGAINST AGI AND ITS ASSIGNEES, INCLUDING QAG, NCB AND, UPON
### INFORMATION AND BELIEF, CREDIT UNION LOAN SOURCE)

75.     Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

76.     Plaintiff's transaction as described herein was a consumer credit transaction within the

meaning of the Truth in Lending Act, 15 §§1601 et seq. ("TILA"), and Federal Reserve Board

Regulation Z, 12 C.F.R. part 226.

77.     AGI is a creditor within the meaning of TILA and Regulation Z.

78.     The rate buy down fee is a "finance charge" as defined under TILA and Regulation Z.

79.     The undisclosed charge for the warranty that AGI falsely informed Mr. Magliocca it was

providing at no additional charge is also a finance charge as defined by TILA and Regulation Z;

in the alternative the difference between the actual amount charged for the warranty, listed in the

"uncropped" version of the contract as $2062.30 and the "warranty fee" as stated to Mr.

Magliocca by AGI post-sale  ($3233 per year or total) is a finance charge as defined by TILA

and Regulation Z.

80.     AGI's failed to disclose these and/or other fees and charges, and failed to include these

and/or other fees and charges as finance charges, in violation of TILA and Regulation Z.

81.     As a result of AGI's failure to properly include these and/or other fees and charges as

finance charges, the APR as listed in Mr. Magliocca's contract is materially understated in

violation of TILA and Regulation Z.

82.     AGI also failed to furnish Mr. Magliocca with copies of the disclosures regarding the

transaction as required pursuant to TILA and Regulation Z.

83.     Specifically, and without limitation, AGI at first failed to provide a copy of the Contract and subsequently, when pressed by Mr. Magliocca, provided a "cropped" copy that did not disclose the Itemization of Amount Financed, the cash price of the vehicle, the unpaid cash price balance, the amount paid to "public officials", the amount paid for New York Sales Tax, or the amount paid for the warranty (which was listed as "N/C", i.e. "no charge" in the Warranty Agreement that was provided to Mr. Magliocca at the time of sale.

84.     AGI further violated its obligation to provide Mr. Magliocca with a full and accurate copy of the Retail Instalment Contract when it refused to provide him with a full and uncropped copy including the itemization of finance charges, in February, 2009.

85.     For all these reasons, AGI, QAG, NCB and, upon information and belief, Credit Union Loan Source are liable under TILA and Regulation Z (see, e.g. 15 U.S.C. §§1640 and 1641) for statutory damages, actual damages, attorney's fees, litigation expenses and costs, for a declaratory judgment that they have violated TILA and Regulation Z, and for such other or further relief as the Court deems appropriate.

## COUNT II
## MAGNUSSON MOSS WARRANTY ACT ("MMCWA"), 15 U.S.C. §§ 2301 et seq
## (AGAINST ALL DEFENDANTS)

86.     Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

87.     AGI is a "supplier" and/or "warrantor" within the meaning of the MMCWA.

88.     GWC is a "supplier" and/or "warrantor" within the meaning of the MMCWA

89.     Mr. Magliocca is a "consumer", as that term is defined in the MMCWA.

90.     The car sold to Mr. Magliocca is a "consumer product" within the meaning of the MMCWA.

91.     There is no dispute resolution mechanism which applies to Mr. Magliocca's warranty dispute.

92.     In the alternative, AGI and GWC have no dispute resolution mechanism which is enforceable under the MMCWA and, also in the alternative, Mr. Magliocca's numerous good-faith attempts to resolve his dispute with AGI and GWC, including his dispute regarding the undisclosed cost of the warranty and his dispute regarding his ability to cancel the warranty and receive a full refund, all of which were rebuffed, constitute compliance with any reasonable dispute resolution requirement.

93.     AGI and GWC violated the MMCWA and its implementing Regulations by failing to clearly and conspicuously make numerous disclosures required under the MMCWA and its implementing regulations.

94.     AGI and GWC violated the MMCWA and its implementing regulations (e.g. 16 C.F.R. 701.3) by including additional warranty terms and conditions and limitations in the "Gallery Store Policy", which is not referred to by the Warranty Agreement.

95.     AGI and GWC further violated the MMCWA by failing to allow Mr. Magliocca to cancel the Warranty, despite the fact that he attempted to do so many times, including on the same day as he was induced to sign, and despite the fact that the warranty document states that "You may return this Contract within. . . ten days of delivery if the Contract was delivered to You at the time sale. In such a case, the Contract will be void and the We [sic] will refund to You the full amount of the purchase price of this Contract." Exhibit 4.

96.     As a result of these violations, Mr. Magliocca is entitled to cancel and rescind (or in the alternative, to revoke his acceptance of) the contract for the vehicle and the Warranty Agreement, and is entitled to actual and punitive damages, declaratory judgment that

Defendants' practices violate the MMCWA, and reasonable attorneys fees, costs and expenses, pursuant to the MMCWA.

## COUNT III
### FRAUD
### (AGAINST AGI AND ITS ASSIGNEES, INCLUDING QAG, NCB AND, UPON INFORMATION AND BELIEF, CREDIT UNION LOAN SOURCE)

97.     Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

98.     AGI's failure to disclose its "rate buydown fee" of between approximately $962-$1105 per year for each of seven years was false and misleading, and constitutes a misrepresentation of material fact.

99.     AGI's representation that the list price of the vehicle Mr. Magliocca was induced to buy ($28,900.00) included at no additional cost a three year warranty was false and misleading, and also constitutes a misrepresentation of material facts.

100.    AGI's representation that it would provide Mr. Magliocca with cheaper or comparably priced financing to the 6.5% financing Mr. Magliocca informed AGI was available to him from another source, was false and misleading, and also constitutes a misrepresentation of material facts.

101.    AGI's representation that the price of the vehicle was $28,900 when the true price including all hidden charges and fees was much higher was false and misleading, and also constitutes a misrepresentation of material facts.

102.    Mr. Magliocca justifiably relied upon each of the aforesaid misrepresentations of material facts, individually and collectively, as a result of which he sustained losses and damages.

103.    Had Mr. Magliocca known the true price of the warranty he would not have agreed to purchase the warranty, and would not have agreed to pay the same price for the vehicle (which he was told came with a free warranty)

104.    Had Mr. Magliocca known that AGI would charge him a "rate buydown fee" he would have obtained alternative financing and/or not purchased the vehicle.

105.    Had Mr. Magliocca known the true cost of financing the vehicle through AGI, once adjusted for all hidden fees and charges, he would have obtained alternative financing and/or not purchased the vehicle.

106.    Had Mr. Magliocca known the true cost of the vehicle, including all hidden fees and charges, he would not have purchased it.

107.    As a result of Mr. Magliocca's reasonable reliance upon AGI's misrepresentations, he has been damaged in an amount to be determined at trial and is entitled to actual and punitive damages, attorneys fees and costs and expenses.

## COUNT IV
## RESCISSION/MISTAKE
## (AGAINST ALL DEFENDANTS)

108.    Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

109.    Although Mr. Magliocca has also alleged the existence of a valid contract or contracts agreement covering the same subject matter as his equitable claim for unjust enrichment, he is not required to elect his remedies.

110.    As alleged herein (see, e.g. Paragraphs 13 through 74, and Counts for Fraud, *supra*) AGI and GWC have committed numerous fraudulent acts and/or made numerous false representations to Mr. Magliocca.

111.    Based on AGI and GWC's fraud and misrepresentation, Mr. Magliocca's execution of the Contract and Warranty Agreement are founded upon material mistake.

15

112.    As a result of AGI and GWC's fraud and misrepresentation and Mr. Magliocca's resulting material mistake, Mr. Magliocca has sustained damages.

113.    Because Mr. Magliocca has repeatedly and consistently, from the very date he was induced to sign the Contract and Warranty Agreement, sought to resolve this dispute, cancel the Warranty, and receive a refund for all charges that were not disclosed to him until after the sale, there can be no claim of laches.

114.    Mr. Magliocca is ready, willing and able to restore the parties to the position each occupied prior to execution of the subject agreements, providing that Defendants return to Mr. Magliocca all the monies paid by Mr. Magliocca in connection with this transaction and otherwise restore Mr. Magliocca to the status quo ante.

115.    Mr. Magliocca has no remedy at law.

116.    By reason of the foregoing, Mr. Magliocca is entitled to a judgment rescinding and setting aside the Contract and the Warranty Agreement, and directing the return to him of all monies paid in connection with this transaction.

## COUNT V
## UNJUST ENRICHMENT
## (AGAINST ALL DEFENDANTS)

117.    Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

118.    Although Mr. Magliocca has also alleged the existence of a valid contract or contracts agreement covering the same subject matter as his equitable claim for unjust enrichment, he is not required to elect his remedies.

119.    AGI, GWC and the other Defendants were enriched as a result of AGI and GWC's dealings with Mr. Magliocca as alleged herein.

120.    Mr. Magliocca suffered a financial impoverishment as a result of these same dealings.

121.    The financial impoverishment suffered by Mr. Magliocca was directly related to the aforementioned enrichment.

122.    There is no justification for the financial impoverishment suffered by Mr. Magliocca, nor for the directly related enrichment enjoyed by Defendants.

123.    Mr. Magliocca has no remedy provided by law.

124.    For these reasons, Mr. Magliocca is entitled to full restitution.

### COUNT VI
### BREACH OF EXPRESS WARRANTIES
### (AGAINST ALL DEFENDANTS)

125.    Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

126.    AGI and GWC made express warranties to Mr. Magliocca.

127.    Specifically AGI and GWC would permit Mr. Magliocca to cancel his warranty within 10 days of delivery of the Contract and receive a full refund.

128.    AGI and GWC breached this express warranty.

129.    Mr. Magliocca has repeatedly sought to rescind/cancel/revoke acceptance of the warranty but has been repeatedly thwarted by AGI and GWC in these attempts.

130.    As a result of this breach, Mr. Magliocca is entitled to rescission/cancellation of both the Retail Instalment Contract and the Warranty Agreement (or in the alternative, revocation of his acceptance of same), actual damages, punitive damages, attorneys fees, costs and expenses.

### COUNT VII
### BREACH OF CONTRACT
### (AGAINST ALL DEFENDANTS)

131.    Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

132.    QWC and Mr. Magliocca entered into a Warranty Agreement on February 25, 2008.

133.    Because of its role in offering and inducing Mr. Magliocca to enter into the Agreement, and because of its role in implementing, enforcing, or limiting implementation and enforcement of the terms of the Agreement, AGI is also a party to the Warranty Agreement.

134.    Mr. Magliocca has performed his obligations under the Agreement.

135.    GWC and AGI have not performed their obligations.

136.    The breaches included, without limitation attempting to charge and/or in fact charging Mr. Magliocca for the warranty, the price of which was stated on the agreement to be "N/C" i.e. "no charge", and refusing to allow Mr. Magliocca to cancel the warranty despite his numerous and repeated attempts to do so.

137.    In addition, without limitation,  GWC and AGI have breached their implied duty of good faith and fair dealing by:

    a.    Breaching the express warranty described herein;

    b.    Misrepresenting to Mr. Magliocca that the warranty was included in the purchase price of $28,900 or otherwise misrepresenting to Mr. Magliocca the true price of the warranty.

    c.    Refusing to allow Mr. Magliocca to cancel the warranty despite his repeated attempts and repeatedly attempting to get him, instead, to refinance his loan or "trade up";

    d.    Taking numerous actions designed to keep Mr. Magliocca from understanding the structure and cost of the transaction including but not limited to failing to give him various relevant transactional documents, and/or giving him a "cropped" version of the Contract that omitted the price of the warranty, and providing him with a warranty that stated the retail amount as "N/C" i.e. No Charge, as well as telling him repeatedly that there was no additional charge for the warranty.

18

    e.  Attempting to induce Mr. Magliocca to sign a release in return for receiving his warranty refund, to which he was entitled pursuant to the Warranty Agreement and under Federal and State law;

    f.  Providing Mr. Magliocca with documents containing unenforceable provisions purporting to limit his rights, in an attempt to discourage him from understanding and/or enforcing his actual rights under state and federal law, and the operative documents signed by the parties.

138.   AGI and Mr. Magliocca entered into a Retail Instalment Contract on February 25, 2008.

139.   Mr. Magliocca has performed his obligations under the Contract.

140.   AGI has not performed its obligations.

141.   These breaches included without limitation, attempting to charge and/or in fact charging Mr. Magliocca in excess of what is called for in the Contract in general and/or with regard to specific items, such as the Warranty, which upon information and belief is listed in the portion of the Contract that was "cropped out" as costing Mr. Magliocca $2062.30.  Exhibit 1.

142.   Defendants also breached their duty of good faith and fair dealing.

143.   Without limitation, AGI has also breach its implied duty of good faith and fair dealing by:

    a.  Misrepresenting the cost of the vehicle;

    b.  Misrepresenting to Mr. Magliocca that the warranty was included in the purchase price of $28,900 or otherwise misrepresenting to Mr. Magliocca the true price of the warranty and/or the vehicle.

c.  Failing to disclose to Mr. Magliocca that there was a substantial "rate buydown fee", failing to include this fee as part of the finance charge and/or failing to adjust the APR accordingly;

d.  Refusing to allow Mr. Magliocca to cancel the warranty or the "rate buydown" despite his repeated attempts and repeatedly attempting to get him, instead, to refinance his loan or "trade up";

e.  Taking numerous actions designed to keep Mr. Magliocca from understanding the structure and cost of the transaction including but not limited to failing to give him various relevant transactional documents, and/or giving him a "cropped" version of the Contract;

f.  Providing Mr. Magliocca with documents containing unenforceable provisions purporting to limit his rights, in an attempt to discourage him from understanding and/or enforcing his actual rights under state and federal law, and the operative documents signed by the parties.

144.   As a result of these breaches of the implied duties of good faith and fair dealing, Mr. Magliocca is entitled to actual damages in an amount to be determined at trial, as well as reasonable attorneys fees, costs and expenses.

145.   As a result of these breaches Mr. Magliocca has suffered harm, including pecuniary harm.

146.   For these reasons, Mr. Magliocca is entitled to actual damages in an amount to be determined at trial, attorneys fees, costs and expenses.

## COUNT VIII
## FRAUD
## (AGAINST GWC)

147.    Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

148.    GWC's listing of the price of the warranty on the Warranty Agreement as "N/C" (i.e. "no charge" was false and misleading, and constitutes a misrepresentation of material fact.

149.    Mr. Magliocca justifiably relied upon this misrepresentation of material facts, as a result of which he agreed to purchase the warranty and the car (the price of which he justifiably believed to include the warranty) and sustained  losses and damages.

150.    Had Mr. Magliocca known the true price of the warranty he would not have agreed to purchase the warranty, and would not have agreed to pay the same price for the vehicle (which he was told came with a free warranty) or, in the alternative, would not have purchased the vehicle at all.

151.    As a result of Mr. Magliocca's reasonable reliance upon GWC's misrepresentations, he has been damaged in an amount to be determined at trial and is entitled, in addition, to punitive damages, attorneys fees and costs and expenses.

## COUNT IX
## NYGBL § 349 (Deceptive Acts and Practices Unlawful)
## (AGAINST ALL DEFENDANTS)

152.    Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

153.    Each of the deceptive acts and practices set forth above, including but not limited to each deceptive act and practice set forth in the Paragraphs 13-74 herein, and set forth in the Counts for violation of TILA, MMCWA, and for Fraud, Rescission/Mistake, and Breach of Express

Warranty constitute violations of NYGBL § 349 independent of whether these acts and practices constitute violations of any other law, including commonlaw.

154.    These deceptive acts and practices were committed in conduct of business, trade, commerce or the furnishing of a service in this state.

155.    These deceptive acts and practices first, were consumer-orientated.

156.    AGI and GWC's conducts and/or statements were materially misleading.

157.    As a result of these violations of NYGBL §349, Mr. Magliocca suffered pecuniary and non-pecuniary harm.

158.    Upon information and belief, AGI and GWC's violations were willful and knowing and committed in bad faith.

159.    For these reasons, Mr. Magliocca is entitled to actual damages, three times the actual damages up to $1000, costs and reasonable attorneys fees pursuant to NYGBL § 349(h), declaratory judgment that Defendants' practices are deceptive as defined under § 349, and an order enjoining AGI from providing its Store Policy to New York consumers, disclosing to consumers the same or any similar document or asking New York consumers to sign this or any similar document.

WHEREFORE Mr. Magliocca respectfully demands judgment against Derfendants as follows:

a.  On COUNT I, TRUTH IN LENDING ACT, 15 §§1601 et seq. ("TILA")(AGAINST AGI AND ITS ASSIGNEES, INCLUDING QAG, NCB AND, UPON INFORMATION AND BELIEF, CREDIT UNION LOAN SOURCE), judgment

against AGI, QAG, NCB and Credit Union Loan Source for statutory damages, actual damages, attorney's fees, litigation expenses and costs, declaratory judgment that they have violated TILA and Regulation Z, and such other or further relief as the Court deems appropriate.

b. On COUNT II, MAGNUSSON MOSS WARRANTY ACT ("MMCWA"), 15 U.S.C. §§ 2301 et seq (AGAINST ALL DEFENDANTS), judgment against all Defendants, cancellation and rescission (or in the alternative revocation of acceptance of) the contract for the vehicle and the contract for the warranty, and actual and punitive damages, and reasonable attorneys fees, costs and expenses, declaratory judgment that Defendants have violated the MMCWA, as well as such other or further relief as the Court deems appropriate.

c. On COUNT III, FRAUD (AGAINST AGI AND ITS ASSIGNEES, INCLUDING QAG, NCB AND, UPON INFORMATION AND BELIEF, CREDIT UNION LOAN SOURCE), judgment against AGI, QAG, NCB and Credit Union Loan Source, actual and punitive damages, attorneys fees and costs and expenses as well as such other or further relief as the Court deems appropriate.

d. On COUNT IV, RESCISSION/MISTAKE(AGAINST ALL DEFENDANTS), a judgment against all Defendants, rescinding and setting aside of the Contract and the Warranty Agreement, and directing the return to him of all monies paid in connection with both transactions as well as such other or further relief as the Court deems appropriate.

e.  On COUNT V, UNJUST ENRICHMENT(AGAINST ALL DEFENDANTS), judgment against all Defendants and an order directing full restitution, as well as such other or further relief as the Court deems appropriate.

f.  On COUNT VI, BREACH OF EXPRESS WARRANTIES(AGAINST ALL DEFENDANTS), judgment against all Defendants, actual damages, punitive damages, attorneys fees, costs and expenses, as well as rescission/cancellation of both the Contract and the Warranty Agreement (or in the alternative, revocation of acceptance) as well as such other or further relief as the Court deems appropriate.

g.  On COUNT VII, BREACH OF CONTRACT (AGAINST ALL DEFENDANTS), judgment against all Defendants, actual damages in an amount to be determined at trial, attorneys fees, costs and expenses as well as such other or further relief as the Court deems appropriate.

h.  On COUNT VIII, FRAUD (AGAINST GWC) judgment against GWC, actual damages, punitive damages, attorneys fees and costs and expenses as well as such other or further relief as the Court deems appropriate.

i.  On COUNT IX, NYGBL § 349 (Deceptive Acts and Practices Unlawful) (AGAINST ALL DEFENDANTS) judgment against all Defendants, actual damages, three times the actual damages up to $1000, costs and reasonable attorneys fees pursuant to NYGBL § 349(h), declaratory judgment that Defendants' acts and practices are deceptive, and an order enjoining AGI from providing its Store Policy to New York consumers, disclosing to consumer the same or any similar document or asking New

York consumers to sign this or any similar document as well as such other or further relief as the Court deems appropriate.

Together with such other relief as law and equity may provide, punitive damages, declaratory judgment, attorneys fees, costs and disbursements of this action and such other and further relief as this Court deems just and proper.

Jury Demanded Hereon.

Dated February 24, 2009

Respectfully submitted,

Daniel A. Schlanger, Esq. (ds-9330)
Schlanger & Schlanger, LLP
Attorneys for Plaintiff
1025 Westchester Ave., Suite 108
White Plains, NY 10604
Ph: 914-946-1981
Fax: 914-946-2930
email: daniel@schlangerlegal.com

# <u>EXHIBITS</u>

**Note**: Some facsimile and email transmittal information has been omitted in order to preserve the attorney client privilege.

Exhibit 1

02-18-09; 06:55PM;                                                                 ;404-675-1027                # 1/  2

0020336191

**RETAIL INSTALMENT CONTRACT**

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| 7.05 % | $9816.48 | $36381.00 | $46197.48 | $54717.48 |

My Payment Schedule will be

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 89 | 518.97 | Monthly beginning 9-26-02 |

In this Contract,
you and me the Seller is **Auto Gallery Imports Inc.**   500 Old Country Rd   Westbury NY 11590

We me the Buyer is **Richard T. Mathison Jr.**   Rome NY 13440

Description of Vehicle:

| N/U | Year and Make | Model | Body Style | No. Cyl. | Serial Number |
|---|---|---|---|---|---|
| U | 2000 Audi | A6 | 4d | 6 | WAUYH54B6YN064970 |

Itemization of Amount Financed

Cash Price   $38700.00
Cash Downpayment   $8100.00

Unpaid Cash Price Balance   $36600.00

Quantum Auto Group, LLC, 135 Broadhollow Road, Suite 275, Melville, NY 11747

**NOTICE TO THE BUYER:** 1. Do not sign this Agreement before you read it or if it contains any blank space. 2. You are entitled to a completely filled-in copy of this Agreement.

Seller **Auto Gallery Imports Inc.**

Co-Buyer   Richard T. Mathison Jr.

**CO-SIGNER NOTICE**

Co-Signer's Signature   N-A
Co-Signer's Signature   N-A

**How The Finance Charge Is Figured:** The Finance Charge, which consists only of interest, has been computed upon the basis that I will pay all installments on the scheduled due dates. If any installment is received later than the scheduled due date, I will be obligated to pay such additional amounts as may become payable by reason of the accrual of interest calculated daily upon the unpaid balance of the Amount Financed. In the event that any installment is made in advance of the scheduled due date, the interest charges will be reduced accordingly. The amount of this decrease or increase will be reflected in the final payment. I shall have the right to prepay the unpaid principal balance in full or in part at any time provided that payments are first applied to accrued interest as of the date of prepayment.

**How Payment In Advance Of Credit Insurance Is Figured:** If I pay all amounts owing under this Contract in advance, I will receive a refund for Group Credit Insurance premiums from me, as specified on the front of this Contract calculated by a formula approved by the Insurance Department.

**Late Charge:** If I fail to pay any installment for more than 10 days from the date it is due, I will owe a late charge of 5% of the unpaid installment.

**Return Check Charge:** If any check, draft or other item I send you in payment of my obligation on this Contract is returned for insufficient funds, I agree to pay you a Return Check Charge of $25.00.

**Collection Costs:** If you hire an attorney to bring a lawsuit to collect any amount owing under this Contract, I will pay you attorney's fees up to 15% of the amount then due, plus court costs, or such lesser amounts as the court allows.

**Payment: After All Amounts Owing Become Immediately Due:** Under certain circumstances, you can declare all amounts owing under this Contract immediately due. If you do and all amounts owing are paid or you sue for them and obtain a judgment, you will calculate what I owe as if I were going to pay in advance.

**Care of Vehicle:** I agree to keep the Vehicle in good condition and repair, not to remove it from the address at which it is presently kept without your prior written consent; not to sell or transfer it or use it as collateral in another transaction; not to use the Vehicle for hire, livery or lease or permit its use in any illegal manner; not to allow someone else to seize the Vehicle or create a lien (claim) on it; and to give you immediate written notice of loss or damage to the Vehicle.

**Insurance Requirements:** I agree at all times to keep the Vehicle insured with comprehensive, fire and theft, and a minimum amount of deductible collision insurance satisfactory to you, endorsed to protect you with a licensed insurance company. If I fail to insure my Vehicle, you may do so and I agree to pay the cost. I agree that any insurance moneys payable by reason of damage to or loss of the Vehicle shall be paid directly and solely to you and may be used to pay my debt to you. If the Vehicle is lost or damaged, you can use the insurance proceeds (money) to replace or repair it, or to repay any amounts I owe you, and I agree that, if necessary, you can settle any insurance claims or sign any insurance checks on my behalf. I agree that loss, damage to or destruction of the Vehicle shall not affect my duty to make the payments under this Contract.

**Further Advances Secured:** If I fail to pay fees taxes or the costs necessary to keep the Vehicle in good condition and repair, you may, if you alone choose, advance any sums necessary to protect your interest in the Vehicle. Any such advances will be secured by the Vehicle and will be subject to a Finance Charge at the Annual Percentage Rate of this Contract.

If I fail to maintain required property insurance, you may, if you choose, obtain equivalent limits of replacement insurance. This replacement insurance will protect your interests, but you are under no obligation to obtain replacement insurance which will also protect my interests. THE INSURANCE YOU PURCHASE MAY BE SIGNIFICANTLY MORE EXPENSIVE AND PROVIDE ME LESS COVERAGE THAN INSURANCE I COULD PURCHASE MYSELF. Any amount you advance will be secured by the Vehicle and will be subject to a Finance Charge at the Annual Percentage Rate of this Contract. At the time of the advance, I will be notified in writing of my options to repay the advance

(i)   in full within ten days of the notice

(ii)  along with my monthly payment;

(iii) if available, as a single monthly payment, one month following payment of all other amounts due under the Contract;

(iv) if available, as additional monthly payments, not exceeding the monthly payments due under the Contract.

Your payments on my behalf will not cure my failure to perform my promises in this Contract.

**Optional Insurance or Service Contracts:** This Contract may contain charges for optional insurance or service contracts. If the Vehicle is repossessed, I agree that you may claim benefits under these contracts and terminate them to obtain refunds for unearned charges.

**Right to Demand Payment in Full:** Upon the following events of default, you can require that the entire balance of my loan be paid at once, without prior notice or demand, if:

1. Any amount owing under this Contract or any other amount I owe you now or in the future is not paid by the day it becomes due; or
2. I break one of my promises under this Contract, or
3. I have made any false or misleading statement on this Contract and/or credit application, or
4. Your name does not appear as the only "lienholder" (claim) on any certificate of title issued now or in the future; or
5. The Vehicle is lost, stolen or damaged without adequate insurance coverage or sold, or given away, or seized, or
6. I file bankruptcy or if any proceeding is instituted to seek relief from my debts, or
7. I die or become legally unable to manage my affairs, or
8. You, in good faith, believe that the prospects of payment or other performance under this Contract is impaired.
9. The Vehicle is seized by a third party (including, without limitation, a municipality or other governmental or quasi-governmental entity) because of the Vehicle's alleged or actual involvement in actual or alleged criminal or unlawful activity and/or where a forfeiture proceeding has been instituted in/before any federal, state or local court or any administrative body.

**Right to Repossess:** You can repossess (take) the Vehicle if one of the events of default (listed in the "Right to Demand Payment in Full" section) occurs. After my default, I will deliver the Vehicle, upon your request, or you can enter the premises where it is kept and take it yourself (as permitted by law), and you need not notify me before you do it. You can sell the Vehicle after repossession and apply the proceeds to the balance of what I owe after deducting your reasonable repossession, storage, repair, preparation for sale and selling expenses. You will send me reasonable notice by mail of any sale of the Vehicle. If my Default consists solely of a failure to make timely payments, I may have certain rights to stop the sale of my Vehicle even after you repossess it if I make timely tender of the amount required to redeem the Vehicle.

To recover any articles I claim are not part of the Collateral but were contained in the Vehicle, I must notify you in writing within 10 days after repossession. Failure to claim and take possession of these items promptly will be an abandonment of them.

If the sale does not cover all that I owe, I will be responsible for the amount still owed. If there is any surplus money, it will be refunded to me.

**Trade-In and Downpayment:** I guarantee that I own the vehicle traded in, if any, and that it is free from any lien or security interest not shown in the "Trade-in" section of the "Itemization of Amount Financed." I also represent that I have made the downpayment and have not borrowed it.

**Title and Security Interest:** If the Vehicle is already titled or is to be titled, I guarantee that I am or will be the registered owner and your security interest shall appear as the only security on any certificate of title now or in the future issued. I agree that you can apply for certificates of title to show your security interest and I agree to assist you in doing so. I also give you permission to file a financing statement (notice of your security interest filed for public record) covering your security interest without my signature on it.

**Waivers and Releases:** You can waive or delay enforcing any of your rights without losing them. You can waive or delay enforcing a right as to one of us without waiving it as to the other. You need not give anyone notice of the waiver, delay or release. Your failure to file a security interest, failure to keep the Vehicle insured, release of a security interest or granting extensions of time or payment shall not affect my obligation under this Contract

**Applicable Law:** This Contract shall be governed by New York law except for its conflict of law provisions. If any provision is found to be ineffective under any law or regulation the remainder will still be binding and effective.

(The following notice shall not apply to any sale for other than personal, family, or household use.)

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**Warranties and Representations:** I warrant and represent that the funds (Collateral) are obtained and will be used in connection with lawful activities, pursuits, endeavors, ventures or businesses, and I will not use the funds (Collateral) to violate any law that could result in forfeiture proceedings being instituted. I agree to promptly inform you of any proposed proceedings or actual proceeding which would subject the funds (Collateral) to forfeiture to any governmental body.

**WARRANTIES:** If this Contract involves the sale of a new Vehicle, the Seller makes no warranty, either expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose, unless Seller has given Buyer a separate written warranty or unless Seller enters into a service contract with Buyer within 90 days from the date of this Contract, or except for any warranty set forth in the Buyer's Guide for Used Cars.

IF THIS CONTRACT INVOLVES THE SALE OF A USED VEHICLE, AS DEFINED UNDER 16 CFR PART 455, THE INFORMATION I SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

## ASSIGNMENT

FOR VALUE RECEIVED, receipt whereof is hereby acknowledged, the Seller hereby sells, transfers, assigns and sets over to the Assignee named on the face hereof, its successors and assigns or any subsequent assignee, all right, title and interest in and to the Contract and to the Vehicle described in the Contract, and to all monies due and to become due under the Contract, any

| | | |
|---|---|---|
| ☐ I WANT optional Group Credit Life Insurance. | $_____ | Insured Buyer's present age _____ |
| ☐ WE WANT optional Group Credit Joint Life Insurance. | $_____ | Insured Co-Buyer's present age _____ |
| ☐ I WANT optional Group Accident and Health Insurance. | $_____ | |

Signature of Buyer _____    Signature of Co-Buyer (For Joint Life Only) _____

Insurer: _____    Max. Amt. of Ins.: _____

**Security Agreement:** As security for this Contract (to protect you if I don't pay), I give you a security interest in the Vehicle being purchased. A security interest means that, if one of the events of default occurs, you can take the Vehicle and under certain circumstances sell it, as is more fully explained in the "Right to Demand Payment in Full" and the "Right to Repossess" sections on the back of this Contract. "Vehicle" shall include tires, parts, equipment, replacement parts or additions to the Vehicle or any vehicle insurance refunds or any proceeds resulting from loss or damage to the Vehicle. If I default (see "Right to Demand Payment in Full" section), you have the right to apply any sums that I have on deposit with you and any group insurance refunds which you receive against any balance that I owe. The Vehicle also secures any advances made to protect your interest in the Vehicle.

I AGREE THAT THE PROVISIONS ON THE BACK ARE PART OF THIS CONTRACT (Continued on reverse side)

**NOTICE TO THE BUYER:** 1. Do not sign this Agreement before you read it or if it contains any blank space. 2. You are entitled to a completely filled-in copy of this Agreement. 3. Under the law, you have the right to pay off in advance the full amount due. If you do so, you may, depending on the nature of the credit service charge, either: (a) prepay without penalty, or (b) under certain circumstances, obtain a rebate of the credit service charge. 4. According to law, you have the privilege of purchasing insurance on the motor vehicle provided for in this Contract from an agent or broker of your own selection.

Seller agrees to this Contract, including terms and conditions on back, and assigns it to the Assignee named above in accordance with the first Assignment printed on the reverse side, unless otherwise marked.

**I HAVE RECEIVED A COPY OF THIS CONTRACT SIGNED BY THE SELLER. RETAIL INSTALMENT CONTRACT.**

Seller _Auto Gallery Imports  Inc._    Buyer _Michael T. Muzzio_
    (Firm Name)

E. _____    Co-Buyer _____

Anyone signing below consents to your taking a security interest in the vehicle described in this Contract and is obligated only under those terms of the Contract which create that security interest and will have no personal responsibility for the payment of obligations existing under the terms of the Contract.

Address _____    Date _____

## CO-SIGNER NOTICE

I agree to pay the debt identified above, although I may not personally receive any property, services or money. I may be sued for payment, although the person who receives the property, services or money is capable of paying the debt. This notice is not the writing that obligates me to pay the debt. I should know that the Total of Payments listed above does not include Finance Charges resulting from delinquency, late charges, repossession or foreclosure costs, court costs or attorneys' fees, or other charges that are stated in the Contract. I will also have to pay some or all of these costs and charges as required by the terms of the Contract. I have read the Retail Instalment Contract, which contains the exact terms of my obligation, and the Co-Signer(s) Notice.

I have been given a completed copy of this Notice and each writing that obligates me or the Buyer on this Contract.

_N — A_ _____    _N — A_ _____
Co-Signer's Signature    Date    Co-Signer's Signature    Date

**CO-SIGNER: I SHOULD READ THE NOTICE TO CO-SIGNER, ABOVE, BEFORE SIGNING THE CO-SIGNER'S AGREEMENT.**
**CO-SIGNER'S AGREEMENT:** I, the person (or persons) signing below as "Co-Signer," promise to pay to you all sums due on this Contract and to perform all agreements in this Contract. I intend to be legally bound by all the terms of this Contract, separately and together, with the Buyer. I am making this promise to induce you to make this Contract with the Buyer even though you will use the proceeds only for the Buyer's benefit. I agree to pay even though you may not have made any prior demand for payment on the Buyer or exercised your security interest. I also acknowledge receiving a completed copy of this Contract.

X _N - A_ _____    Address _N - A_ _____    Date _____
Co-Signer's Signature

X _N - A_ _____    Address _N - A_ _____    Date _____
Co-Signer's Signature

BANCORPSOUTH FORM NY 23 SLC 12/21/2001    **NOTICE. SEE REVERSE SIDE FOR IMPORTANT INFORMATION.**    © 2001 BANKERS SYSTEMS, INC.

ORIGINAL: White • BUYER'S COPY: Canary • BANK FILE COPY: Pink • DEALER'S COPY: Goldenrod

Exhibit 2

## RETAIL INSTALMENT CONTRACT

**Meaning Of Some Words:** In this Contract, the words "I," "me," "we," and "my" mean anyone signing this Contract as Buyer. The words "you" and "your" mean the Seller or, after the Seller transfers its rights under this Contract, anyone having those rights.

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid after I have made all scheduled payments. | Total Sale Price The total cost of my purchase on credit, including my downpayment of $ 8100.00 |
|---|---|---|---|---|
| 7.05 % | $ 9816.48 | $ 36381.00 | $ 46197.48 | $ 54297.48 |

My Payment Schedule will be:

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 84 | $ 549.97 | Monthly, beginning 3-26-08 |

e means estimate

**Security:** I am giving a security interest in the motor vehicle being purchased

**Filing Fees:** $ _____   **Non-Filing Insurance:** $ _____

**Late Charge:** If a payment is late more than 10 days, I will be charged 5% of the payment.

**Prepayment:** If I pay off early, I will not have to pay a penalty.

My Contract documents have additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

In this Contract:

We are the Seller:

Auto Gallery Imports Inc.
Name

500 Old Country Rd
Westbury NY 11590
Address          Zip Code

We are the Buyer(s): Richard T. Magliocca Jr.
Name(s)

534 W. Thomas St
Rome NY 13440
Address(es)          Zip Code(s)

This Contract is between Seller and Buyer. All disclosures have been made by Seller. Seller intends to assign this Contract to the Assignee named below.

If there is more than one Buyer, each of us will be obligated, separately and together, for all sums due you and the performance of all agreements as provided in this Contract.

**Description of Vehicle:** (See "Insurance Requirements" section)

| N/U | Year and Make | Series | Body Style | No. Cyl. | Truck Ton Capacity | Serial Number |
|---|---|---|---|---|---|---|
| V | 2006 Audi A6 | 4 dr | 6 | V6 | | WAuDG74F56N064970 |

Equipped with: ☑ A.T. ☑ P.S. ☐ AM-FM Radio  Other _____
☐ AC  ☐ PB  ☐

Acct. No. _____
Date 2-25-08

Itemization of Amount Financed

Exhibit 3



**500 Old Country Rd.**
**Westbury, NY 11590**
**Tel: (516) 280-7555**
**Fax: (516) 280-7557**

## STORE POLICY

Year: **2008**    Make: **Audi**    Model: **A6**    Date: **2-6-08**
Vin: **WAUDG 74F58N 064930**

**ALL SALES ARE FINAL. NO RETURN OR EXCHANGE.**
All warranty claims must be through the Dealership Service Department, by appointment only. To make an appointment call 516-280-7555, ask for the Service Department -   Monday thru Friday 10:00am – 5:00pm.

All repairs are done by third party repair facilities. Dealership is not responsible for any theft or damages of any kind to the above referenced vehicle or any personal property left in the vehicle. Auto Gallery Imports Inc is not responsible to arrange a loaner car, or reimbursement for a rental vehicle while vehicle is in service. We do not make any representations or warranty any accessories such as radar detectors, sos systems, navigation systems, cd devices, time & temp. gauges, tv, vcr and dvd players.

Dealer is not required to provide any services to the vehicle if the vehicle is sub-let to a third party. For all repairs, Purchaser/Lessee personally must contact Auto Gallery Imports Inc. To claim warranty, vehicle must be brought to Auto Gallery Imports Inc, or any of our designated third party repair facilities. Use of vehicle for purpose of hire, commercial or racing will void the warranty. Also if the above referenced vehicle is stolen or involved in an accident, or if the vehicle is modified or altered; warranty is then void. Dealer is not responsible for any previous repairs (mechanical, physical, minor or major). Dealer must be notified in writing, by Certified Mail, with return receipt requested with-in 48 hours of delivery of any existing problem at time of delivery.

Once delivery of the vehicle takes place, all advertisements, oral agreements, representations and negotiations are null and void. In case of dispute between Auto Gallery Imports Inc. and the Purchaser/Lessee, before any legal actions, Purchaser/Lessee is required to notify the Dealer by certified Mail to the dealership address: Attn: Controller. Explain the dispute along with contact information. Allow 10 business days and co-operate with the controller to resolve the matter. Otherwise the Purchaser/Lessee will waive his or her rights to dispute at a Court of Law. This transaction is governed by, laws of the state of New York. All claims, suites must be filed in Nassau County, State of New York. Seller is not responsible for any legal fees. Seller's maximum liability on this transaction is limited to $3000(except mechanical repairs covered under NYS limited warranty). Purchaser is responsible for all the seller's legal fees, in case of loss or dismissal of a suite or claim.

Purchaser must cooperate with Auto Gallery Imports Inc. to fund loan or lease by the primary lender, otherwise he or she will be in default & must pay entire amount financed in full immediately. Failure to comply or make a satisfactory agreement with Auto Gallery Imports Inc., will result in repossession of the above referenced vehicle and purchaser will forfeit entire down payment and will be held accountable for all losses and legal fees. Auto Gallery Imports Inc. is not responsible for delays on out-of-state registrations, for any reason. If Purchaser/Lessee, purchases an extended warranty, that warranty is subject to acceptance by the primary warranty company, in case of non-acceptance, Auto Gallery Imports Inc. shall have the right to void the contract and offer Purchaser/Lessee a different warranty contract, or refund amount paid. In any case maximum liability for dealer is the purchase price of the warranty agreement, which was paid. Auto Gallery Imports Inc. shall not be responsible, if a claim was submitted and not paid by the warranty company for any reasons. All warranty contracts must be signed by both Purchaser/Lessee and Auto Gallery Imports Inc to be valid. If extended warranty is purchased and paid by check or credit card and is not signed or payment is charged back the contract is null and void. If a check accepted by the Dealership is returned unpaid for any reasons, there will be a $50 return check fee & after 15 days if not paid, an additional 33% collection agency fee will be added to the amount of the check.

A faulty service light complaint must be accompanied by a mechanical malfunction. (Please note: that a service engine light may turn or for numerous reasons, such as using regular gasoline instead of super unleaded gasoline or filling gas tank while engine is running.) We suggest all our customers to take advantage of extended warranty's that is offered by reputable Warranty/Insurance companies, in order to avoid unexpected large mechanical bills in the future.

**I have read, understood and agree to the terms and conditions above:**

Purchaser/Lessee                                        Purchaser/Lessee
   Signature  _Vedat T. Mangucunli_                        Signature  _____

Exhibit 4

**GUARDIAN WARRANTY CORPORATION**

407 McAlpine Street • P.O. Box 5068 • Avoca, PA 18641-0068
1-800-482-7357 • Local: 570-414-7777
Fax: 1-888-840-7883 • Fax: 570-414-7883
www.guardian-warranty.com

*"Fully Insured"*

**Administrator Use Only**

| | | Preowned | | | | | Gold | |
|---|---|---|---|---|---|---|---|---|
| Class | | 1 | 2 | 3 | 4 | 5 | | |
| Coverage | | PT | S | C | | | | |
| Amount | | | | | | | | |
| Options | | | | | | | | |
| Ded. Adj. | | | | | | | | |
| Total | | | | | | | | |
| Dlr. Ck. | | | | | | | | |
| Check # | | | | | | | | |

*(Please Press Hard and Print Clearly)*

Customer Name _____

Current Address _____

City _____

State / Zip _____

Customer Ph. ( ) _____ Cell ( ) _____

Dealer Name _____

Dealer # _____

Dealership State Lic. # _____

Vehicle Year _____
Vehicle Make _____
Vehicle Model _____
Mileage _____
VIN. No. _____
Vehicle Price _____
Engine Size _____
Transmission _____   ☐ 4WD/AWD

Reviewed by _____
Accepted by _____
Date ___ / ___ / ___
Contract # _____

| CONTRACT CHOICE (Check One X) | GUARDIAN GOLD (Check One X) |
|---|---|
| ☐ 90 Days or 4,500 Miles | ☐ 24 Months or 24,000 Miles |
| ☐ 180 Days or 7,500 Miles | ☐ 36 Months or 36,000 Miles |
| ☐ 12 Months or 14,500 Miles | ☐ 48 Months or 50,000 Miles |
| ☐ 24 Months or 26,500 Miles | ☐ 60 Months or 64,000 Miles |
| ☐ 36 Months or 38,500 Miles | |
| ☐ 48 Months or 50,000 Miles | |
| ☐ Contract Renewal | |
| ☐ Contract Transfer | |
| ☐ Contract Upgrade | |

**THANK YOU FOR CHOOSING GWC**     **RETAIL AMOUNT   $ NC**

## STATED COMPONENT COVERAGE (If an item is NOT specifically listed then the item is NOT covered)

**POWERTRAIN COVERAGE INCLUDES: ENGINE:** All internally lubricated parts, Camshaft and bearings, Connecting rods and bearings, Crankshaft and bearings, Cylinder block, Main bearings, Distributor shaft, Exhaust manifold, Intake manifold, Oil pump and gears, Pick-up screen, Pistons, Piston rings, Wrist pins, Timing chain and gears, Timing belt, Cylinder heads, Exhaust valves, Intake valves, Valve springs and retainers, Push rods, Rocker arms and shafts, Hydraulic and solid lifters. **SEALS AND GASKETS:** Cylinder head gaskets and intake manifold gaskets are covered. All other seals and gaskets are covered as a result of a covered repair. **TRANSMISSION: Automatic** - All internally lubricated parts, Governor, Vacuum modulator, Torque converter, Gears and shafts, Bearings, Bushings, Bands, Clutch plates, Friction and steel drums, Pump, Servo unit, Valve body Synchronizer drums, Overdrive housing. (Exclusions are Clutch, Pressure plate, throwout bearing, linkage, cables, shifter, electronic switches, solenoids, and clutch slave cylinders) **FOUR (4) WHEEL DRIVE AND ALL WHEEL DRIVE:** All internally lubricated parts, Transfer case, Bearings, Bushings, Chains, Gears, Sleeves, and Sprockets. **DRIVE AXLE:** All internally lubricated parts, Drive axle housing, Ring and pinion gears, Spider gears, Side gears, Bearings, Bushings, Spacers, Yokes, Axle shafts, Driveshafts, Carrier bearing, Universal joints, CV joints (Provided the boots are not torn or damaged). (Exclusions are CV joint boots, locking hubs and wheel hubs). **LABOR / DIAGNOSTICS:** Labor charges shall be based on the current Motor's Labor Guide and rates shall be within accepted industry standards. Diagnostics are covered only in conjunction with a stated component repair up to one (1) hour labor. **TOWING:** Reimbursement up to $50 per covered breakdown. **DEDUCTIBLE CHOICE:** As selected above per repair visit.

**STANDARD COVERAGE INCLUDES POWERTRAIN PLUS THE FOLLOWING: AIR CONDITIONING:** (OEM Equipment Only) Accumulator, Compressor, Clutch, Clutch bearing, Condenser, Dryer/Receiver, Evaporator. (Exclusions are component failure due to contamination of the specified manufactured refrigeration oil, recharge and evacuation of system. A/C system conversion from freon to other chemicals and any retrofit process). **BRAKES:** All internally lubricated parts of the hydraulic system including the Master cylinder, Vacuum power assist booster and valve, Disc brake calipers, Wheel cylinders. Steel brake lines and Hoses. (Exclusions are: Linings, Rotors, Pads, Drums, Hardware and any component failure due to fluid contamination). **ABS:** (Coverage not available on 90 or 180 day Contracts) including Electronic control processor, Pressure modulator valve, Isolation dump valve, Accumulator, Wheel speed sensors, Hydraulic pump and Motor assembly. **COOLING:** Radiator, Water pump, Thermostat, Electric radiator fan, Fan and clutch, Coolant recovery container. (Exclusions are Belts, Hoses, Heater core, Blower motors, and Electronic switches). **ELECTRICAL:** Alternator, Electric horn, Front wiper motor, Rear wiper motor, Rear defroster switch, Starter motor, Starter drive assembly, Starter solenoid, and Voltage regulator. **FLUIDS:** Any fluids required as a result of a covered repair. (Exclusions are Air conditioning refrigerant, Filters, Oil additives). **HI-TECH ELECTRICAL:** (Coverage not available on 90 or 180 day Contracts) Fuel Pump, Power antenna motor, Power door lock actuators and switches, Power mirror motors and switches, Power seat motors and switches, Power sunroof motor, Power convertible top motor, Power window motors, regulators, and switches, Electronic ignition module. **STEERING:** Power steering pump, Rack and pinion, Steering gear box. **SUSPENSION:** Upper and lower control arms, Upper and lower ball joints, Leaf and coil springs (Only if broken), Wheel Bearings, and Spindles. **TURBOCHARGER:** (OEM Equipment Only) Surcharge applies. All internally lubricated parts, Housing, Wastegate, Vanes, Shafts, and Bearings. **RENTAL CAR REIMBURSEMENT:** In the event that a mechanical breakdown of a covered component requires labor in excess of eight (8) hours, you are reimbursed up to $25.00 per day for a maximum four (4) days. (Exclusions are delays caused by unavailability of parts, shipping, shop schedules). **DEDUCTIBLE CHOICE:** As selected above per repair visit. **ROADSIDE ASSISTANCE AND TOWING:** 1-866-293-3543 Details on State Requirements and Disclosure Page.

**COMPREHENSIVE COVERAGE INCLUDES POWERTRAIN, STANDARD, PLUS THE FOLLOWING: ENHANCED COOLING (HARD COAT) ENVIRONMENTAL COVERAGE:** Power trunk release, Neutral safety switch, Stop lamp brake switch, Washer fluid pump. **ENHANCED ENGINE:** Engine mounts, Timing belt tensioner, Timing and valve covers, (only as a result of a covered component failure), Transmission mounts, Flywheel, Flex plate. **FUEL SYSTEM:** Injectors, metering valve, lines and fittings, Fuel gauge sending unit, Fuel tank (only as a result of corrosion). **INTERIOR / EXTERIOR:** Hood latch and cable, Door locks, handles, hinges, Trunk lock and hinges, Seat adjuster springs, Washer fluid exit ports, Glove box lock. **SENSOR PACKAGE:** Oxygen sensor (O2), Mass air flow (MAF), and Manifold absolute pressure (MAP). Optional on Standard Coverage. Surcharge applies. **DEDUCTIBLE CHOICE:** As selected above per repair visit. Zero ($0) deductible applies only on Guardian Gold Comprehensive coverage.

**IMPORTANT DEFINITIONS:** You should understand and the definitions . . .

**NEW HAMPSHIRE** The definition of "We", "Us", "Our", or "GWC" on the front page of this Contract is replaced with the following:

- "We", "Us", "Our", or "GWC" means the Selling Dealer  This Contract is between You and the Dealer with GWC being the Administrator of this Contract

To transfer this Contract, the following must be submitted to the Administrator within 30 days of the change of ownership to a subsequent individual purchaser: 1  Original Contract and Application, and 2  Name and Address of new owner; date of sale to new owner, and current mileage  We will not charge you transfer fee. If the Contract is canceled within the first sixty (60) days and no claims have been filed. We will refund the entire Contract charge paid.  If this Contract is canceled after the first sixty (60) days or a claim has been filed  We will refund an amount of the Contract charge according to the pro-rata method reflecting the greater of the days in force or the miles driven based on the term of the plan and the date Coverage begins. There is no cancellation fee charged to You  In the event of cancellation, the Lien Holder, if any, will be named on a cancellation refund check as their interests may appear. In the event that You do not receive satisfaction under this Contract  You may contact the New Hampshire Insurance Department at 21 South Fruit Street, Suite 14, Concord, NH  03301 or phone 1-800-852-3416 or 1-603-271-2261.

**NEW JERSEY** The definition of "We", "Us", "Our", or "GWC" on the front page of this Contract is replaced with the following:

- "We", "Us","Our", or "GWC" means the Selling Dealer  This Contract is between You and the Dealer with GWC being the Administrator of this Contract.

**NEW YORK**  Section 198-b of New York General Business Law requires an automobile dealer to provide a warranty covering certain classes of used motor vehicles as follows:

| Used Vehicles with 36,000 miles or less at time of sale | Used Vehicles with more than 36,000 miles but less than 80,000 miles at the time of sale |
| Provides Coverage for 90 days or 4,000 miles, whichever occurs first | Provides Coverage for 60 days or 3,000 miles, whichever occurs first |
| Used Vehicles with 80,000 miles or more but not more than 100,000 miles at the time of sale | |
| Provides Coverage for 30 days or 1,000 miles, whichever occurs first. | |

The Vehicle You have purchased may be covered by this law ... ... ... ... Furthermore, the Definitions, Coverages, and Exclusions stated in this Contract apply only to this Contract and are not the ... days of delivery if the Contract was delivered to You at the time of sale  In such a case, the Contract will be void and the We will refund to You the full amount of the purchase price of this Contract  This right to void the Contract is not transferable and applies only to the original Contract holder. If You cancel this Contract otherwise, You will be provided a pro-rata refund less a $25.00 cancellation fee and less any claims that have been paid  You may return this Contract by mailing it to the attention of the Administrator at the address listed on the face of this Contract  If We do not pay the refund before the 30th day after the date of cancellation by Us, We are liable to the Contract holder for a penalty not to exceed ten percent (10%) of the amount outstanding per month  The aforementioned cancellation provisions only apply to the original purchaser of the Contract and is not transferable

**NORTH CAROLINA** There shall be added to the first page of this Contract in the applicant's signature area just above the signature line the following  "THE PURCHASE OF THIS CONTRACT IS NOT REQUIRED EITHER TO PURCHASE OR TO OBTAIN FINANCING FOR A MOTOR VEHICLE". If this Contract is canceled within the first sixty (60) days and no claims have been filed. We will refund the entire Contract charge paid.  If this Contract is canceled after the first sixty (60) days or a claim has been filed. We will method reflecting the greater of the days in force or the miles driven based on the term of the plan and the date coverage begins less an administration fee of twenty-five dollars ($25) of the pro-rata refund amount, whichever is less  In the event of cancellation, the Lien Holder, if any, will be named on a cancellation refund check as their interest may appear  This Contract will not be canceled by Us unless there is a direct violation by the Contract holder as stated in the Contract.

**RHODE ISLAND**  Section 31-5.4 of Rhode Island General Business Law requires an automobile dealer to provide a warranty covering certain classes of used motor Vehicles as follows:

| Used Vehicles with 36,000 miles or less at time of sale | Used Vehicles with more than 36,000 miles but less than 100,000 miles at the time of sale |
| Provides Coverage for 90 days or 4,000 miles, whichever occurs first | Provides Coverage for 30 days or 1,000 miles, whichever occurs first |

The Vehicle You have purchased may be covered by this law. If so, the following is added to this Contract in addition to the Dealer Warranty required by this law, You have elected to purchase this Contract, which may provide, You with additional protection during the Dealer Warranty period and provides protection after the Dealer Warranty has expired. You have been charged separately only for the required Dealer Warranty. Furthermore, the Definitions, Coverages, and Exclusions stated in this Contract apply only to this Contract and are not the term of the required Dealer Warranty.

**SOUTH CAROLINA** If this Contract is canceled within the first sixty (60) days and no claims have been filed. We will refund the entire Contract charge paid  If this Contract is canceled after the first sixty (60) days or a claim has been filed. We will refund an amount of the Contract charge according to the pro-rata method reflecting the greater of the days in force or the miles driven based on the term of the plan and the date Coverage begins.  In the event of cancellation, the Lien Holder, if any, will be named on a cancellation refund check as their interest may appear  If the provider does not ... within sixty (60) days ... You may contact the South Carolina Department of Insurance, 1.12 Mailing Street, Columbia, South Carolina 29201 ... ... or telephone at (803) 737-6231.

**VERMONT**  Act 169 Section 4253 - 2a states that This Service Contract sold or offered for sale to a consumer in this state shall fail to contain the authorization of the original Service Contract ... or return the Contract within twenty (20) days of the Contract if no claim has been made under the Contract and obtain a refund of the full purchase price of the Contract  This Contract does not provide Coverage for personal injury including bodily injury, property damage, except as otherwise specifically stated in this Contract ) and attorney fees.

**VIRGINIA** The definition of "We", "Us" and "Our" under important Definitions on the front page of this Contract is replaced with the following: "We", "Us" and "Our" refers to  Guardian Warranty Corp  Notice to Dealer - Dealers are not permitted to sell vehicle with Contract on leased vehicles pursuant to the provisions of administrative letters 1982-10 and 1982-16. We do not cover loss due to fraud, dishonesty, or any criminal act

**WEST VIRGINIA** You may cancel this Contract at any time within the first ninety (90) days after the Contract purchase date by contacting the Selling Dealer  After that ninety (90) day period, this Contract may be canceled only by Us or the Lien Holder as specified herein.

**FORD MOTOR CREDIT CORPORATION CUSTOMERS:** You, FMCC, or the Dealer may request a refund at any time during the term of the Contract. The selling Dealer and Us agree to refund the full purchase price to You, less any claims, if canceled within the first sixty (60) days from the date of purchase. After sixty (60) days, we shall calculate the amount to be returned to You by prorating the amount paid to Us by the Dealer based on the remaining term or mileage of the Contract and deducting any claims paid by Us and a $25.00 administrative fee. In the event of a cancellation FMCC will be named on the cancellation check as their interest may appear. All cancellation requests must be requested through the selling Dealer

**GENERAL MOTORS ACCEPTANCE CORPORATION CUSTOMERS:** You, GMAC, or the Dealer may request a refund at any time during the term of the Contract. The selling Dealer and Us agree to refund the full purchase price to You, less any claims, if canceled within the first sixty (60) days from the date of purchase  After sixty (60) days, We shall calculate the amount to be returned by Us by prorating the amount paid to Us by the Dealer based on the remaining term or mileage of the Contract and deducting any claims paid by Us and a $25.00 administrative fee. In the event of a cancellation, GMAC will be named on the cancellation check as their interest may appear. All cancellation requests must be requested through the selling Dealer.

## GUARDIAN 24 HOUR, 7 DAY ROADSIDE ASSISTANCE AND TOWING INSTRUCTIONS IN THE EVENT OF A BREAKDOWN

In the event that Your Vehicle ... ... ... ... ... the Guardian Contract Number listed on Your Acceptance Card. You are covered ... ... ... ... ...

You are covered for the following items during the term of Your Contract until expiration:

- **EMERGENCY ROAD SERVICE AND TOWING:** You are covered up to $35 for road service and up to $50 per towing disablement  (Up to 25 Miles).
- **BATTERY SERVICE:** If battery fails, a jump-start will be applied to Your Vehicle.

Exhibit 5

ATTN: SHAUN, AUTO GALLERY IMPORTS

FROM: RICHARD MAGLIOCCA

REGARDING: 2006 AUDI A6 SALE, VIN WAUDG74F56N064970

I never agreed to any "rate buydown" on this loan. I was originally going to go through my own bank for a 6.5% interest rate. However, Henry said he could "beat that rate any day" and also I figured it would be a lot easier to go through you guys since I live so far away. Now I am paying 7.05% interest and a buydown charge of $1105.49 times each of the 7 years of the loan, according to you on our recorded phone conversation on 3/20/08. You and I both know this is a shady practice. I would not have had this fee through my own bank. Not to mention this isn't even a fee charged by The Credit Union Loan Source who this loan for the Audi is though. Please send me a check for $7738.43. This would be the easy way for you to settle this. Otherwise, exposure of this kind would not be very good for your company.

Thank you,


Richard Magliocca
534 W Thomas St
Rome, NY 13440
richard.magliocca@gmail.com

Exhibit 6

**From:** Richard M [mailto:daredevil_1983@hotmail.com]
**Sent:** Tuesday, October 28, 2008 10:49 AM
**To:** Denise Guiliano
**Subject:** RE: warranty cancellation

The refund should be 100 percent as it was cancelled within the 20 days of receiving my policy number in the mail. I have been trying to cancel since the day after the vehicle was purchased. I have the email saying GWC didn't have the paperwork yet. As soon as I received the final policy number (C1039081) from you guys I had the dealer fax the cancellation form. I will forward that email to you right after I send this. The original policy number was E543985.

---

From: DGuiliano@guardian-warranty.com
To: daredevil_1983@hotmail.com
Date: Fri, 24 Oct 2008 16:44:42 -0400
Subject: RE: warranty cancellation

Richard,

It was sent to Auto Gallery on 9-25-08. The refund was based on .6428 percent of unused mileage.

Contact them for your refund.

Have a good week-end.

Thank you,

Denise

**Denise Guiliano**
**Guardian Warranty Corporation**
Cancellations
407 McAlpine Street
Avoca, PA 18641-0068
**Phone** – 1-800-482-7257 x.169
**Fax** – 570-414-7883
**Email -  dguiliano@guardian-warranty.com**
**Website - www.guardian-warranty.com**

---

**From:** Richard M [mailto:daredevil_1983@hotmail.com]
**Sent:** Thursday, October 23, 2008 4:36 PM
**To:** Denise Guiliano
**Subject:** warranty cancellation

Hi I am checking to verify if my warranty cancellation has been processed yet. It was faxed to you on 9/24/08. The warranty number is C1039081.

Thank you,

Richard Magliocca

Exhibit 7



# Fax

**To:** RICHARD

**Fax:**                      **Pages:2/2**

**Phone: 516-280-7555**         **Date:10/06/08**

**Re:**                        **CC:**

☐ **Urgent**    ☐ **For Review**    ☐ **Please Comment**    ☐ **Please Reply**

HI RICH

PLEASE SIGN & NOTIRIZE AND MAIL ORIGINAL BACK TO BELOW ADDRESS

-THANKS

AUTO GALLERY IMPORTS
500 Old Country Rd            Telephone: (516) 280-7555        NYAutoGallery.com
Westbury, NY 11590           Fax: (516) 280-7557         www.autogalleryimports.com

# GENERAL RELEASE

KNOW ALL MEN BY THESE PRESENTS, that RICHARD MAGLIOCCA, as RELEASORS in consideration of the sum of $767.42 received from AUTO GALLERY IMPORTS INC. as RELESEE, its officers, directors, employees, heirs, executors, administrators, successors and assigns, of and from all actions, suits, proceedings, debts, dues, sum of money, contracts judgments, damages, claims, and demands whatsoever in law or equity, which against the RELEASEE, we ever had, now have, or which are hairs, executors, or administrators hereafter can, shall, or may have or may have for or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the date of this release.

This release is being given as a result of settlement between AUTO GALLERY IMPORTS INC. and RICHARD MAGLIOCCA
Reference To:----2005 AUDI A6 VIN# WAUDG74F56N064970----------------------------------
----------

AUTO GALLERY IMPORTS INC. will make no further monetary payment to RICHARD MAGLIOCCA or any lending institutions arising from the above mentioned purchase transaction.

RELEASORS hereby further agree to save, indemnify and hold harmless RELEASEE from any and all claims, actions suits, proceedings, judgments, damages fines and demands whatsoever in law or in equity, including consequential damages, arising out of or relating to the purchase of said automobile to complaints made to office of consumer affairs and any other agency of government relating to the purchase of said automobile.

This RELEASE may not be changed orally.

IN WITNESS WHEREOF, RELEASORS have hereunto set their hands the 30TH day of - JANUARY
2009.

------------------------
RICHARD MAGLIOCCA

State Of _____

County Of _____

Subscribed and sworn to (or affirmed) before me this _____ day of _____,
_____ by RICHARD MAGLIOCCA
Whose identity I proved on the basis of _____ to be the signer of the above instrument, and he/she acknowledge that he/she signed it.


_____          _____
Name of Notary Public              Signature of Notary Public

Exhibit A

Auto Gallery Imports Inc.
500 Old Country Road
Westbury, NY 11590

February 26, 2008

Dear Auto Gallery Imports Inc.,

I would like to please cancel the GWC extended warranty I purchased on my 2006 Audi
A6, VIN WAUDG74F56N064970. Policy # E 543985. I was told it was included in the
price of the vehicle which was listed as $28,900. I was not aware I would be charged an
extra $3233 per year for 3 years coverage. Please cancel or send the required cancellation
form for the warranty company.

Thank you,

Richard Magliocca
534 W Thomas St
Rome, NY 13440

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**1. Article Addressed to:**

Auto Gallery Imports

500 Old Country Rd.

Westbury NY 11590

Attn: Controller

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Hen_  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )  C. Date of Delivery

Steve

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

(postmark: WESTBURY 11590-9 FEB 29 2008 USPS)

**3. Service Type**
☐ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

**4. Restricted Delivery? (Extra Fee)**  ☐ Yes

**2. Article Number**
(Transfer from service label)

7006 2150 0001 2860 8929

PS Form 3811, February 2004          Domestic Return Receipt

Exhibit   B

## ASSIGNMENT

:This ASSIGNMENT dated as of March 03, 2008, from QUANTUM AUTO GROUP, LLC ("Quantum") to NCB, FSB ,("NCB").

    FOR VALUE RECEIVED, pursuant to a certain retail installment Contract Purchase and sale Agreement dated as of October 31, 2007, by and between Quantum and NCB(the "Agreement"), Quantum does hereby sell, 'transfer, assign and convey to NCB, its successors and assigns, free and clear of all liens and encumbrances and subject to the terms and conditions of that certain Retail Installment Contract Purchase and Sale Agreement dated March 03, 2008, all of its right title and interest in, to and under the retail installment sales contract ("Contract") attached hereto and identified herein, together with all of its right, title and interest in and to the 'Vehicle and all other property and security described in the contract, documents, payments, recoveries, proceeds and obligations of the obligor and/or guarantor thereunder arising therefrom or in connection therewith, and all rights in and to payment with respect to the foregoing and all rights to enforce the foregoing, with full power in 'NCB, to take such legal or other action with respect to the foregoing which Quantum might have taken save for :this Assignment.

    This Assignment specifically includes, but is not limited to, all right, title and interest in and of Quantum in any :insurance policies or insurance proceeds purchased, endorsed or obtained by the Obligor under the terms of the 'Contract, including without limitation, such assignment of insurance policies and proceeds and GAP products, to 'the extent such interests exist. This Assignment specifically includes all right, title and interest of Quantum in and 'to any property or security interest described or provided in the Contract.

    Capitalized terms used but not defined herein shall have the meanings specified for such terms in the Agreement. In the even of any inconsistency between the terms of this Assignment and the Agreement, the terms of the Agreement shall prevail.

    IN WITNESS WHEREOF, Quantum has caused this Assignments to be executed by its duly authorized officer effective as of the date first set forth above.

QUANTUM AUTO GROUP, LLC.


                         EVP


'Contract Ref # / Obligor: 336191, Magliocca,  Richard
.VIN#: WAUDG74F56N064970
Year: 2005
.Make:AUDI          Model: A6-V6
>

Exhibit   C



From: DGuiliano@guardian-warranty.com
To: daredevil_1983@hotmail.com
Date: Thu, 30 Oct 2008 09:25:42 -0400
Subject: RE: warranty cancellation

Mr. Magliocca,


The cancellation was completed according to the information on the cancellation form that you signed on 9/24/08, with 50,700 miles.

We pro rated the refund based on this information. That is something that is between you and the dealer at that time. If the information on the form was incorrect, it should have been changed at that time, before you agreed to the date and mileage by putting your signature on it.

If you need to speak with anyone regarding your refund it must be the dealer. Once the cancellation is completed, you are no longer in our system as an active customer. Please call with any questions 800-482-7357 ext 169.



Sincerely,

Denise Guiliano




**Denise Guiliano**
**Guardian Warranty Corporation**
Cancellations
407 McAlpine Street
Avoca, PA 18641-0068
**Phone** – 1-800-482-7257 x.169
**Fax** – 570-414-7883
**Email -  dguiliano@guardian-warranty.com**
**Website - www.guardian-warranty.com**